UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGE WILLIAM REEDER,

                         Plaintiff,

v.                                     Civil Action No. 14-01871 (TFH)

THE HONORABLE DEBORAH LEE
JAMES, Secretary of the Air Force,

                         Defendant.

## MEMORANDUM OPINION

Plaintiff George William Reeder ("Reeder") served in the United States Air Force from 1982 until 1998. He met and married fellow Air Force member Staff Sergeant Linda Graybill ("Graybill") while serving at Incirlik Air Base in Turkey. Unfortunately, by all accounts, their relationship was dysfunctional and abusive. During the marriage, Graybill accused Reeder of giving her a black eye, and Reeder's commander found him guilty of that offense. Later, Reeder was found guilty of additional offenses related to the aftermath of the first offense. After being honorably discharged from the Air Force, Reeder appealed to the Air Force Board for Correction of Military Records ("AFBCMR" or "the Board")[1] seeking review of the commander's

---

[1] "The AFBCMR is the highest level of administrative review within the Department of the Air Force." *Frequently Asked Questions, AF Board for Correction of Military Records*, http://www.afpc.af.mil/afveteraninformation/airforceboardforcorrectionofmilitaryrecords/faq.asp (last visited Aug. 13, 2015). "The Board operates within the Office of the Secretary of the Air Force, and consists of civilians in the executive part of the Department of the Air Force who are appointed and serve at the pleasure of the Secretary of the Air Force." *Id.*

decisions. The AFBCMR upheld the commander's decisions, and Reeder then filed this lawsuit seeking review of the AFBCMR's decisions under the Administrative Procedures Act ("APA").

I.  BACKGROUND

A. **Reeder's Relationship with Graybill, Allegations of Abuse, and Reeder's First Non-Judicial Punishment**

Reeder enlisted in the United States Air Force and began active duty service on June 4, 1982. Am. Compl. ¶ 19 [ECF No. 11]. Reeder met Graybill on Thanksgiving Day, 1995; they were married on June 18, 1996 and divorced on April 21, 1997. Am. Compl. ¶ 24. On July 15, 1996, Major Roger Parsons, one of Reeder's commanders, filed a letter of reprimand against Reeder after Graybill alleged that he had damaged and disposed of some of his wife's clothes and photographs without her permission. *See* Administrative Record ("A.R.") at 362. Reeder denied those allegations, but later admitted that he gave away some men's clothing he found in Graybill's apartment while she was away on a temporary duty assignment. *See* A.R. at 345.

On August 9, 1996, Graybill sustained a black eye. *See* A.R. at 176, 341. On August 15, 1996, Graybill reported to a military police officer that Reeder had punched her in the eye. *See* A.R. 176, 307.[2] She also alleged that Reeder had beat her on their wedding night. *Id.*[3] On August 15, 1996, based on Graybill's allegations, Reeder's commander, Major Kobayashi, issued an order directing Reeder to have no contact with Graybill (hereinafter referred to as "the

---

[2] Graybill made a sworn statement the following day, August 16, 1996. A.R. at 176; Am. Compl. ¶ 26.

[3] The administrative record contains multiple conflicting accounts about how both Reeder and Graybill sustained injuries on their wedding night. Reeder, Graybill, and other witnesses all recounted different versions of the events of that evening. Graybill reported to the military police officer that Reeder had beat her on their wedding night, but Reeder was never found guilty of this allegation. Therefore, this Court need not analyze the events of that evening.

no-contact order"). Am. Compl. ¶ 25; A.R. at 173. On August 22, 1996, Major Kobayashi notified Reeder that he intended to impose non-judicial punishment under Article 15 of the Uniform Code of Military Justice ("UCMJ")[4] for the alleged battery. Am. Compl. ¶ 27; A.R. at 179.

Reeder was represented by counsel, decided to waive his right to trial by court-martial, and elected to proceed with non-judicial punishment. Am. Compl. ¶¶ 28-29. On September 4, 1996, Reeder presented a lengthy written statement to Major Kobayashi recounting his version of the events of August 9, 1996, where he admitted he caused her injury, and a detailed picture of his relationship with Graybill. A.R. at 341-51. Reeder contended that Graybill was the sole aggressor in their relationship, and that she consistently abused him but he never abused her. *Id.* Reeder insisted that Graybill sustained the black eye because he was defending himself when she attacked him.[5] *Id.* Reeder also submitted several statements from individuals who had observed

---

[4] Article 15 proceedings "authorize[ ] military commanders to punish subordinates without the formalities, rules, and rights of a trial." Def's Mot. Summ. J. 3. "Article 15 provides commanders a way to efficiently address disciplinary infractions with something more than a slap on the wrist, but less than a criminal conviction." *Id.*

[5] Reeder stated:

> On Friday, August 9th, my wife and I were sitting on the couch in my apartment watching television. I don't remember what was said exactly but it was in reference to the video we were watching. Linda had been drinking some wine and began to argue over the movie. She grew very angry, stood up on the couch and began punching me about the face and head area. I put my hands over my face and head in self defense. I moved my legs towards my chest and inadvertently exposed my testicles. She stepped on them hard with her full[ ] body weight. Immediately and without thought I pushed her off the couch onto the floor. She tripped over a wicker coffee table which sits next to the couch causing her to fall. She skinned her arms, her butt and hit her face on one of the wooden chairs . . . resulting in a black eye. I did not, nor have I ever,

Graybill's harsh and abusive treatment of Reeder. A.R. at 313-339. On September 11, 1996, Major Kobayashi directed that Reeder undergo a mental health evaluation. Am. Compl. ¶ 37. On October 2, 1996, Major Kobayahsi conducted the non-judicial punishment hearing and found Reeder guilty of the offense of battery. A.R. at 179-182. He sentenced Reeder to a reduction in grade to Senior Airman,[6] but suspended the sentence until April 1, 1997, so that the sentence would not take effect if he did not commit any further offenses during the time of suspension.

### B. Reeder's Second Non-Judicial Punishment

On August 22, 1996, while the no-contact order was still in place, Reeder called Graybill's mother to find out if she knew where Graybill was and to inquire whether Graybill intended to stay married. Pl.'s Cross-Mot. Summ. J. [ECF No. 14] 15; *see also* AR 323. When Reeder called Graybill's mother, she informed Reeder that Graybill was at her home, asked if he wanted to speak with her, and then gave Graybill the phone. *Id.* at 13-14. Reeder then spoke with Graybill for fifteen to twenty minutes. A.R. at 64. Reeder contends that he did not intentionally violate the no-contact order, and that he did not know Graybill would be there when he called Graybill's mother. A.R. at 374-75. On September 6, 1996, Major Kobayashi notified Reeder that he intended to impose non-judicial punishment under Article 15 for violating the no-contact order. A.R. at 25-26; Pl.'s Cross-Mot. Summ. J. 16. On October 30, 1996, Major Kobayashi

---

    intentionally hurt anyone. Her injury was sustained as a result of her attack on
    me.

A.R. at 341.

[6] At the time of the Article 15, Reeder was a Staff Sergeant.

found Reeder guilty of disobeying a lawful order and ordered the punishment of "[f]orfeiture of $150.00 pay per month for 2 months." Pl.'s Cross-Mot. Summ. J. 16; *see also* A.R. at 26.

After Major Kobayashi found Reeder guilty of violating the no-contact order, Graybill's mother submitted a written statement supporting Reeder's version of the events. *See* A.R. at 366; *see also* A.R. at 368 ("I was to blame for [Reeder talking to Graybill]. He told me at the beginning that he wasn't supposed to talk to her because he had an order not to – I just handed her the phone.").

### C. Vacation of Suspension of Reeder's First Sentence

On October 8, 1996, Reeder drank alcohol excessively and cut his wrists in an apparent suicide attempt. Pl.'s Cross-Mot. Summ. J. 17; *see also* A.R. at 46, 203-205. Reeder's roommate found him intoxicated and bleeding. A.R. at 203-205. Reeder threw an empty wine bottle at his roommate and told him to leave him alone so he could "do what he had to do." *Id.* The roommate stated that Reeder had been depressed about the Article 15s and had made jokes previously about killing himself. *Id.* The roommate called for help and Reeder was transported to the hospital by Turkish police. While in the hospital, Reeder was visited by a Senior Airman and a Master Sergeant. In their presence, Reeder used profane and disrespectful language.[7]

---

[7] According to the Senior Airman, Reeder made the following statements:

> My commander is a spineless [expletive], and if First Sergeant would of [sic] done his [expletive] job, I would not of [sic] been in all of this [expletive]. With all do [sic] respect, [expletive] you sir! That [expletive] offered me a second chance to take a [sic] article 15. I asked the [expletive] commander to judge on this shit, thinking he would be cool about it, but he found me guilty. If I could get ahold of one of your guns, I'd blow my head off right here.

A.R. at 379. According to the Master Sergeant, Reeder appeared intoxicated and made the following statements:

On November 7, 1996, Major Kobayashi notified him that he was considering whether to vacate the suspension of Reeder's punishment of reduction in rank because of the disrespectful language Reeder used while in the hospital, throwing the wine bottle, and being drunk and disorderly. A.R. at 184-186. On November 18, 1996, Major Kobayashi found Reeder guilty of one or more of the offenses and directed the punishment of a reduction in rank to senior airman "with a new date of rank of 2 October 1996." A.R. at 184.

### D. Appeals, Discharge from the Air Force, and Applications to the AFBCMR

Reeder appealed each of Major Kobayashi's decisions to Kobayashi's commander, Colonel Barry Shade, and each of the decisions were upheld. Am. Compl. ¶¶ 31 & 43. Reeder was honorably discharged from the Air Force on February 16, 1998 because of "high year tenure" as a Senior Airman. Am. Compl. ¶ 22. Reeder's separation was characterized as a "Reduction in Force." *Id.* In December 2001, the Department of Veterans Affairs ("VA") rated Reeder as 50% disabled due to PTSD from being battered and abused. Am. Compl. ¶ 47. In May 2002, the VA increased that rating to 100% disabled. *Id.*; *see also* A.R. at 225.

Reeder first applied to the AFBCMR on November 2, 1998, requesting that his Article 15 records be set-aside. A.R. at 16-36. The AFBCMR denied his application on December 1, 1999.

---

> [Expletive] you and the Commander. You guys found me guilty. I didn't do it. You [expletive] [expletive] [expletive] believed her whole story. And the [expletive] Squadron commander, Maj Bob Fucking Kobayashi. You [expletive] [expletive] found me guilty. How in the [expletive] did you find me guilty? I didn't do it. Nothing personal but [expletive] you and [expletive] the Commander. You [expletive] strung me along for nothing.

A.R. at 381.

A.R. at 10-15.[8] On May 11, 2010, Reeder filed a second application that consisted of a memorandum of law and 50 enclosures. A.R. at 58-387. He also submitted additional medical records from the VA. A.R. 388-411. The second application argued that the evidence available to the commander did not establish Reeder's guilt of domestic violence (A.R. at 68-81); Reeder did not willfully violate the no-contact order (A.R. at 81-83); Reeder was mentally unstable when he committed the offense of disrespect (A.R. at 83-85); and Reeder's separation from the Air Force resulted from his mental condition and the miscarriage of justice he suffered (A.R. at 85-86). The AFBCMR denied Reeder's second application on May 25, 2011. A.R. at 415-417. On September 6, 2011, Reeder, through counsel, submitted a letter informing the AFBCMR that its decision provided an insufficient explanation of its rationale for denial and requested further consideration. A.R. at 412-13. The AFBCMR denied the application again on January 30, 2013 by a vote of 2-1. A.R. at 1-5.

Reeder filed his complaint in this Court on November 6, 2014, alleging that the AFBCMR's decision was arbitrary, capricious, and unsupported by evidence or otherwise contrary to law. *See* Compl. [ECF No. 1]. With the Secretary's consent, Reeder filed an amended complaint on April 23, 2015. *See* Am. Compl. [ECF No. 11]. Reeder seeks to set aside the AFBCMR decisions under review and remand the matter to the AFBCMR for expungement of the Article 15 records in his Official Military Personnel File.

II. **LEGAL STANDARD**

---

[8] Reeder is not challenging the decision denying his first application to the AFBCMR. Am. Compl. ¶ 17.

Pending before this Court are the parties' Cross-Motions for Summary Judgment [ECF Nos. 13 & 14]. Though styled as Motions for Summary Judgment, the parties more accurately seek review of an administrative decision under the APA. Thus, the standard in Rule 56(c) is inapplicable because the court has a more limited role in reviewing the administrative record. *See Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* at 90 (internal quotation marks and citations omitted). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 160 (D.D.C. 2011) (internal citations omitted); *see also Richards v. INS*, 554 F.2d 1173, 1777 (D.C. Cir. 1977).

"The Administrative Procedure Act . . . sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). This Court can only set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). This is a "narrow" standard of review, and "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). However, a decision that is not fully explained can only be upheld "if the agency's path may be reasonably discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

### III.   ANALYSIS

A. **Standard of Review**

By statute, "the Secretary of a military department <u>may</u> correct any military record of [her] department <u>when [she] considers it necessary</u> to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (West) (emphasis added). Military records are reviewed by the civilian boards for correction of military records, and federal courts review final decisions made by the civilian records correction boards under the APA. *Remmie v. Mabus*, 898 F. Supp. 2d 108, 118 (D.D.C. 2012). This Circuit's longstanding practice is to give military correction boards an "unusual" level of deference, one that is higher than the deference afforded other federal agencies. *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014); *see also Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 161 (D.D.C. 2011) ("Considering the wide latitude granted to the Secretary by Congress, this Circuit has found that decisions by the [civilian review boards] receive the benefit of an unusually deferential application of the arbitrary and capricious standard.").

> [T]he question whether a particular action is arbitrary or capricious must turn on the extent to which the relevant statute . . . constrains agency action. While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination. It is simply more difficult to say that the Secretary has acted arbitrarily if [s]he is authorized to act 'when [s]he considers it necessary to correct an error or remove an injustice,' 10 U.S.C. § 1552(a), than it is if [s]he is required to act whenever a court determines that certain objective conditions are met, *i.e.*, that there has been an error or injustice.

*Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989).

While this Court must accord the Secretary with a high level of deference, that does not mean the Secretary's exercise of discretion is unreviewable. The Secretary "must give a reason that the court can measure," but "only the most egregious decisions may be prevented under such

--9--

a deferential standard of review." *Kreis*, 866 F.2d at 1514-15. This Court cannot "disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action," *Antonelli v. McHugh*, 783 F. Supp. 2d 94, 97 (D.D.C. 2011), but "an agency's explanation must minimally contain a rational connection between the facts found and the choice made," *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995).

### B. Merits

#### 1. Counts One and Two: Offense of Battery and Violation of the No-Contact Order

Reeder argues that the AFBCMR's decisions to uphold the commander's initial finding that Reeder battered his wife and violated the no-contact order were arbitrary and capricious, unsupported by substantial evidence, and contrary to law and mandatory procedure. Pl.'s Cross-Mot. Summ. J. 34-38, 39-41 [ECF No. 14]. Reeder contends that because there is overwhelming evidence that Graybill was the primary aggressor in their relationship, this evidence makes it more likely that she was the aggressor during the incident in which Graybill sustained the black eye.[9] *Id.* Reeder also argues that Graybill provided inconsistent accounts of both the events of their wedding night and the evening where she sustained the black eye; Reeder contends that these inconsistencies render her version of the events regarding the alleged assault less credible. *Id.* at 31-33. Finally, Reeder argues that the AFBCMR's decision lacks appropriate fact finding and analysis. *Id.* at 38.

The Secretary contends that the AFBCMR's decision was supported by sufficient record evidence, and the evidence provided by Reeder that he was abused by his wife does not exclude

---

[9] Reeder admits that he pushed Graybill which caused her to fall thereby resulting in a black eye. A.R. at 341. Reeder merely disputes that he struck her in the eye. *Id.*

--10--

the possibility that he also abused his wife. Def.'s Mot. Summ. J. 26 [ECF No. 13]. The Secretary also argues that the inconsistencies stemming from the events of Reeder and Graybill's wedding night and Reeder's version of how Graybill sustained the black eye reduced Reeder's credibility before his commander. *Id.* at 26-27. Finally, the Secretary contends that the commander most likely took into account the evidence showing that Graybill was abusive towards Reeder because Reeder's punishment for the battery was initially suspended. *Id.* at 27-28.

With respect to the no-contact order, Reeder argues that he did not intend to contact Graybill, but rather, telephoned his mother-in-law. Pl.'s Cross-Mot. Summ. J. 39-40, 42. The Secretary argues that Reeder's argument is frivolous because he admitted to violating the no-contact order and talking to his wife for fifteen to twenty minutes. *Id.* at 29; *see also* Def.'s Opp. to Pl.'s Cross-Mot. Summ. J. 16-18 [ECF No. 19]; *see also* A.R. at 64.

The AFBCMR's 2013 decision stated that it considered the evidence submitted by Reeder, the cases cited by Reeder's counsel, and the advisory opinions provided by Air Force Legal Services Agency ("AFLSA"). *See* A.R. at 3-4. The Board reported that the majority of the panel did "not believe that . . . evidence [that Reeder was subjected to abuse at the hands of his wife] is proof the applicant did not strike his wife, nor are we convinced the commander did not exercise due diligence in investigating the facts and circumstances of the instant case." *Id.* at 3. Exactly what the commander investigated is unclear because there is no written record of the evidence from Reeder's Article 15 process.

AFLSA noted in their advisory opinion, "[s]ince we do not have all the documentation before us, we defer to the actions of the commander and the Article 15 appellate authority." *Id.*

at 40. AFLSA also reminded the Board, "the applicant had the opportunity to turn down the Article 15 and demand a trial by court-martial. He chose to present the evidence to his commander." *Id.* Furthermore, the AFBCMR stated that various supporting statements were considered by both the commander making the initial determination, and "[a]bsent evidence to the contrary, [the Board] presume[s] [the commander] acted in good faith and used his knowledge of events and circumstances at the time in arriving at the appropriate punishment for the applicant's misconduct."[10]

This Court finds that the AFBCMR's decision was appropriate because the Board's 2013 decision "contain[s] a rational connection between the facts found and the choice made." *Dickson*, 68 F.3d at 1404. In light of the consideration the Board has given Reeder's case, not once, but three times, and because this Court is required to give the Secretary unusual deference, this Court concludes that the Board's decision to uphold the commander's decisions regarding the battery and violation of the no-contact order are not arbitrary or capricious. Accordingly, this Court will grant summary judgment in favor of the Secretary with respect to Counts One and Two.

### 2. Count Three: Offense of Disrespect

With respect to the offense of disrespect, Reeder argues that he was mentally unstable, intoxicated, and incompetent when he committed the offense, and therefore, was not responsible

---

[10] The 2013 decision stated: "This Board has twice determined the NJP [non-judicial punishment] actions rendered upon the applicant for assaulting his former spouse and subsequently violating a no-contact order were appropriate to the circumstances and within the commander's discretionary authority." A.R. at 2. The 2012 decision stated: "The applicant violated his commander's order to have no contact with his wife prior to the decision being made regarding the first Article 15." A.R. at 12.

for his conduct. Pl.'s Cross-Mot. Summ. J. 43. Alternatively, Reeder argues that he became intoxicated and suicidal because the finding of guilt for battery was a "miscarriage of justice," and but for the false allegation, he would not have become intoxicated and suicidal.[11] *Id.* at 44.

The Secretary contends, without citation to authority, that the Board did not have to address the additional arguments regarding the disrespect action because Reeder's submission to the AFBCMR was primarily premised on his actual innocence of the first charge. Def.'s Mot. Summ. J. 28-29; *see also* Def.'s Opp. to Pl.'s Cross-Mot. Summ. J. 16-18 [ECF No. 19].[12] Finally, the Secretary argues that the disrespect action was based on four offenses, any one of which could have sustained the action.[13] Def.'s Opp. to Pl.'s Cross-Mot. Summ. J. 19.[14] Because, according to the Secretary, Reeder does not dispute that those actions actually occurred, the Secretary contends that it was appropriate for the Board to defer to the commander. *Id.* at 18-19.

---

[11] In light of this Court's decision that the AFBCMR's decision to uphold the commander's finding of guilt for the battery was not arbitrary or capricious, this argument has no merit.

[12] The Secretary also argues that Reeder's mental state during the disrespectful outburst was considered by the commander because Reeder was ordered to undergo a mental health evaluation. Def.'s Mot. Summ. J. 30. However, this mental health evaluation occurred on September 11, 1996, and the outburst for which Reeder was punished occurred on October 8, 1996 when he was "actively suicidal." A.R. at 184-85, 200-01.

[13] The four offenses were disrespect toward his commander, disrespect towards his superior noncommissioned officer, throwing a wine bottle, and becoming drunk and disorderly. A.R. at 184-86.

[14] Reeder insists that this argument is *post hoc* rationalization by counsel. The AFBCMR does not discuss any of the four offenses in their decisions. *See* Pl.'s Reply to Def.'s Opp. 14 [ECF No. 21].

Military review boards act arbitrarily in failing to respond to non-frivolous arguments that could affect the Board's disposition, but "an agency's decision need not be a model of analytic precision to survive a challenge." *Rudo v. Geren*, 818 F. Supp. 2d 17, 25-26 (D.D.C. 2011) (quoting *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997)). "There is a strong presumption that the personnel involved in the decision making process have faithfully discharged their duties." *Smith v. Dalton*, 927 F. Supp. 1, 5 (D.D.C. 1996). However, in conducting the review of the AFBCMR's decision, this Court must have sufficient information to determine whether the Board's decisions were proper. *Id.*

> The reason why defendants must provide sufficient information is threefold: (1) it enables the court to give proper review to the administrative determination; (2) it helps to keep the administrative agency within proper authority and discretion, as well as helping to avoid and prevent arbitrary, discriminatory, and irrational action by the agency; and finally (3) it informs the aggrieved person of the administrative boards' rationale so he can plan his course of action, including requests for judicial review.

*Id.*

When the AFBCMR does not properly address an argument asserted by Reeder, this Court cannot give the Board the deference to which it is normally entitled. "A fundamental requirement of administrative law is that an agency set forth its reasons for [its] decision." *Remmie*, 898 F. Supp. 2d at 119 (internal quotation marks and citations omitted). The agency must provide a "brief statement of the grounds for denial" when denying a written application. 5 U.S.C. § 555(e). This Court must examine whether the Board "has considered all of the evidence before it, and if so, if it has stated why evidence contrary to the final decision was 'disregarded or given less weight.'" *Smith*, 927 F. Supp. at 5 (quoting *Mozur v. Orr*, 600 F. Supp. 772, 782 (E.D. Pa. 1985)). Indeed, the court "may not accept . . . counsel's *post hoc*

rationalizations for agency action. It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. at 50 (internal citations omitted).

Reeder submitted medical records showing that he was suicidal at the time when he committed the offense of disrespect, and the Board should state what difference this makes, if any, in reviewing the commander's determination. The Board's decision fails to provide "any basis upon which [this Court] could conclude [the denial] was the product of reasoned decisionmaking" regarding the effect, if any, of Reeder's mental state at the time of the disrespectful outburst. The Board has not fulfilled its duty to provide a brief statement explaining "why it chose to do what it did." *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001). While the Secretary argues that the disrespect action could have stood on any of the four offenses, the Board's decisions do not address any of the four offenses, and this Court cannot rely on *post hoc* rationalizations of counsel. *See Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. at 50.

This Court notes that the Board "decides cases on the evidence of the record. It is not an investigative body." 32 C.F.R. § 865.2(c). Thus, as the Secretary has argued, Reeder is not entitled to a do-over of the Article 15 process or to obtain a "new decision." *See* Def.'s Mot. Summ. J. 29. However, Reeder is entitled to know how the Board arrived at its decision, and this Court must be able to ascertain the Secretary's basis for the decision in order to review it. *Remmie*, 898 F. Supp. 2d at 131. In order "[t]o conduct even a limited review, [this Court] must be made privy to the Board's reasoning." *Dickson*, 68 F.3d at 1406 n. 17. Because there is no

analysis of Reeder's contentions regarding his mental state in the Board's challenged decisions, this Court must remand to the Secretary for further explanation on that limited basis alone.

## CONCLUSION

For the foregoing reasons, this Court will issue a contemporaneous Order on this date granting in part and denying in part Defendant's Motion for Summary Judgment, denying in part and granting in part Plaintiff's Cross-Motion for Summary Judgment, and remanding the matter to the Secretary for further proceedings consistent with this Opinion.

August 14TH, 2015

Thomas F. Hogan
Senior United States District Judge